# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,

v.                                            CIV 18-0064 MCA/KBM
                                             CR  16-2107 MCA/KBM

TYSON SICILY ATOLE,

    Defendant-Movant.

## **PROPOSED FINDINGS OF FACT AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on Defendant-Movant Tyson Sicily Atole ("Atole's") Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. *Doc. 17*.[1] By an Order of Reference filed January 23, 2018, this matter was referred to the undersigned to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of this habeas action. *Doc. 18*. The undersigned is satisfied that an evidentiary hearing is unnecessary, because Atole's Motion and the record of the case conclusively establish that he is not entitled to relief. *See* 28 U.S.C. § 2255(b) (providing that a court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"). Having reviewed all the submissions of the parties and the relevant law, and being otherwise fully advised in the premises, the Court recommends that Atole's Section 2255 Motion be denied.

---

[1] Citations to "Doc." refer to docket numbers filed in Criminal Case No. 16-2107 MCA/KBM.

I.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In a separate criminal case, Atole was charged by Indictment, on January 26, 2016, with Assault with a Dangerous Weapon and Assault Resulting in Serious Bodily Injury, in violation of 18 U.S.C. §§ 113 and 1153. *United States v. Atole*, 16cr0289 MCA, *Doc. 2*. According to the Presentence Investigation Report, Atole was videotaped on May 2, 2015, striking a woman with a whiskey bottle, kicking her in the ribs, picking her up by her hair, and violently slamming her head and torso to the ground. *Doc. 8* at 5. The report indicates that the woman suffered a concussion with loss of consciousness for an unknown duration as well as other injuries and scarring to her forehead. *Id.* ¶ 12.

Three months later, in the instant criminal case, Atole was charged with a second assault in violation of 18 U.S.C. §§ 113 and 1153. The United States alleged that this second assault took place on January 28, 2016, two days after Atole's indictment for the 2015 assault. *Doc. 2*. According to the Presentence Investigation Report, Atole repeatedly struck the arm and elbow of a female officer with the Jicarilla Apache Nation Police Department, causing torn ligaments and tendons that ultimately required surgery. *Doc. 8* ¶¶ 16, 19.

On May 16, 2016, Defendant pled guilty to Assault with a Dangerous Weapon for the 2015 incident and Assault Resulting in Serious Bodily Injury for the 2016 incident. *Doc. 5* at 2. Atole and the United States entered into a Plea Agreement, which consolidated the two separate assault cases into one plea. *Doc. 5.* In the Plea Agreement, Atole acknowledged that 28 U.S.C. § 1291 and 18 U.S.C. § 3742 afforded him the right to appeal his convictions and sentence. *Doc. 5* ¶ 15. Nevertheless, he agreed therein to "knowingly waive[] the right to appeal the . . . conviction(s) and any

sentence." *Id.* Moreover, he agreed to "waive any collateral attack to [his] conviction(s) and any sentence, including any fine, pursuant to 28 U.S.C. §§ 2241 or 2255, or any other extraordinary writ, except on the issue of defense counsel's ineffective assistance." *Id.* Atole also agreed that his guilty plea was "freely and voluntarily made and [was] not the result of force, threats, or promises." *Id.* ¶ 18.

At a plea hearing before the Honorable Kirtan Khalsa on May 16, 2016, Atole testified concerning the contents of his Plea Agreement. *See Doc. 21*. For instance, Judge Khalsa specifically asked Atole whether he understood that he was "giving up [his] right to collaterally attack [his] conviction and sentence, except on the issue of [his] attorney's ineffective assistance of counsel." *Doc. 21* at 17:5-9. Atole responded affirmatively. *Id.* at 17:10. Likewise, he testified that he had read and understood each and every term in the Plea Agreement. *Id.* at 12:11-22.

The Presentence Investigation Report found a criminal history category I and a total offense level of 25 and calculated Atole's guideline imprisonment range to be 57 to 71 months. *Id.* ¶ 78. On February 22, 2017, after hearing from the parties and reviewing the video of the 2015 incident, the Honorable Robert A. Junell sentenced Atole to a term of 71 months for each count, imposed concurrently. *Doc. 16*.

On January 25, 2018, Atole filed the instant Motion to Vacate, Set Aside, or Correct the Sentence under § 2255.

## II.  LEGAL STANDARD

Under 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence,

3

> or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A Section 2255 motion must allege facts that, if proven, would warrant relief from his conviction or sentence. *See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995).

Collateral review under Section 2255 "is not an alternative to appellate review for claims that could have been presented on direct appeal but were not." *United States v. Megleby*, 420 F.3d 1136, 1139 (10th Cir. 2005). However, the movant may overcome this procedural bar by showing either of two well-recognized exceptions. *See United States v. Cervini*, 379 F.3d 987, 990 (10th Cir. 2004). First, he must show good cause for failing to raise the issue earlier as well as actual prejudice to his defense. *Id.* at 990. Cause may be established under this exception by demonstrating ineffective assistance of counsel. *United States v. Wiseman*, 297 F.3d 975, 979 (10th Cir. 2002). Otherwise, the movant must show that failing to consider the federal claims will result in "a fundamental miscarriage of justice." *Cervini*, 379 F.3d at 990.

## III. DISCUSSION

In his Section 2255 Motion, Atole asserts that his sentence should be vacated "because it implicates selective or malicious prosecution and equal protection violation" and because his attorney, Benjamin A. Gonzales, failed to provide effective assistance of counsel, when he "did nothing to remedy the potential conflict of interest and selective prosecution inherent [in] the case." *Doc. 17* at 5, 7. According to Atole, the arresting officer involved in the 2016 incident, to whom he was related, "falsely claimed she was assaulted" as a result of "inter-family squabbles and feuds." *Id.* Atole insists that Mr. Gonzales was "grossly ineffective for failing to investigate the depth of [the

female officer's] relationship with his client," which he maintains would have revealed a "fatal conflict of interest" and "trumped up" charges. *Id.* at 8. Atole asserts that his sentence and conviction should be vacated on account of "selective prosecution" and his attorney's "refusal to subject the government's case, to 'strict adversarial testing.'" *Id.*

In response, the United States argues that Atole waived his right to collaterally attack his conviction and sentence on any issue other than ineffective assistance of counsel, including on the issue of selective prosecution. *Doc. 22* at 3. Moreover, it contends that Atole has failed to establish that his counsel was ineffective or that he suffered prejudice. *Id.*

**A. Waiver**

While a defendant may move, under 28 U.S.C. § 2255, for a determination that his sentence was imposed in violation of the Constitution, here, the Court must first consider whether Atole waived the right to collaterally attack his conviction. Notably, a claim of selective prosecution is typically waived upon entry of a guilty plea, so long as the plea is not conditional. *See United States v. Cortez*, 973 F.2d 764 (9th Cir. 1992).

Here, Atole's Plea Agreement unequivocally states, under the heading "Waiver of Appeal Rights," that "Defendant agrees to waive any collateral attack to the Defendant's conviction(s) and any sentence, including any fine, pursuant to 28 U.S.C. § § 2241 or 2255, or any other extraordinary writ, except on the issue of defense counsel's ineffective assistance." *Doc. 5* at 7. In *United States v. Cockerham*, 237 F.3d 1179 (10th Cir. 2001), the Tenth Circuit squarely addressed the enforceability of waivers of Section 2255 claims, concluding that a "waiver of collateral attack rights brought under § 2255 is

generally enforceable where the waiver is expressly stated in the plea agreement and where both the plea and the waiver were knowingly and voluntarily made." *Id.* at 1183. Then, in *United States v. Hahn*, 359 F.3d 1315 (10th Cir. 2004), the Tenth Circuit set out a three-step analysis for reviewing the enforceability of a waiver of appellate rights:

> (1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice.

*Id.* at 1325.

### i. Scope

First, the Court considers whether Atole's claims fall within the scope of the waiver of his collateral attack rights. In this regard, the Court can discern two somewhat distinct claims, only one of which is within the scope of the waiver. First, Atole contends that his conviction "should be vacated, because it implicates selective or malicious prosecution and equal protection violation." *Doc. 17* at 7. To the extent that this claim is not tied to the performance and advice of his legal counsel, it falls squarely within the scope of the waiver contained in Atole's Plea Agreement.

In contrast, Atole's related ineffective assistance of counsel claim – wherein he contends that "Counsel Gonzalez [sic] was ineffective for not investigating the circumstances of petitioner's case and arguing selective prosecution" – falls outside the scope of the waiver. Again, the Plea Agreement waiver only governs Section 2255 claims that are not "on the issue of defense counsel's ineffective assistance." *See Doc. 5* at 7.

### ii. Knowing and Voluntary Waiver

Although Atole does not contend that his agreement to the plea and waiver was either unknowing or involuntarily, the Court, nevertheless, considers two factors: (1) whether the language of the plea agreement states that defendant entered into the agreement knowingly and voluntarily and (2) whether there was an adequate Federal Rule of Criminal Procedure 11 colloquy. *See Hahn*, 359 F.3d at 1325.

Atole's Plea Agreement outlined his rights, including his right to plead not guilty and to have a trial by jury, and it explained that if he did plead guilty, he would be giving up those rights. *Doc. 5* at 1-2. The Agreement also provided that Atole was admitting the essential facts that made him guilty of the charges of Assault with a Dangerous Weapon and Assault Resulting in Serious Bodily Injury and that his signature on the Plea Agreement constituted his acknowledgment that he was pleading guilty because he was, in fact, guilty of the offenses charged. *Id.* 2-3. As discussed herein, the Agreement explicitly included the waiver of collateral attacks pursuant to Section 2255, except as to the issue of defense counsel's ineffective assistance. Atole agreed that he "knowingly" waived his appellate rights, and the Agreement also provided as follows:

> Defendant agrees and represents that this plea of guilty is freely and voluntarily made and is not the result of force, threats or promises (other than the promises set forth in this agreement and any addenda). There have been no promises from anyone as to what sentence the Court will impose.

*Id.* at 7-9.

By signing the Agreement, Atole agreed that he "carefully discussed every part of th[e] agreement with [his] attorney," that he both understood and voluntarily agreed to its terms, and that his attorney had advised him "of the consequences of entering into

7

this agreement." *Id.* at 9. Similarly, counsel certified, by his signature, that he had "carefully discussed every part of th[e] agreement with [his] client" and that "[t]o [his] knowledge, [his] client's decision to enter into this agreement [was] an informed and voluntary one." *Id.*

At his Plea Hearing before the Honorable Kirtan Khalsa, Atole testified concerning the contents of his Plea Agreement. *See Doc. 21*. He testified that he had read and understood each and every term in the plea agreement. *Id.* at 12:11-22. Additionally, he testified that he went through the entire plea agreement with his attorney and that his attorney explained each and every term of the agreement to him and answered any of his questions. *Id.* at 12:14-13:1.

Atole indicated that he understood that he had the right to plead not guilty and to go to trial. *Id.* at 6-7. He acknowledged that if he went to trial he would have the right to confront and cross-examine the government's witnesses, to present evidence, to compel witnesses to come to trial to testify on his behalf, to testify himself, or to refuse to testify. *Id.* He also acknowledged his understanding that, if he went to trial, he could not be convicted unless the jury unanimously agreed that the United States had proven his guilt beyond a reasonable doubt. *Id.* at 7.

Judge Khalsa asked Atole if anyone had threatened him or tried to force him to enter into the Plea Agreement, and he responded, "No." *Id.* at 17. Judge Khalsa also inquired whether anyone had made any different or additional promises to him not contained within the Plea Agreement, and Atole again responded, "No." *Id.* Finally, Judge Khalsa specifically asked Atole whether he understood that he was "giving up [his] right to collaterally attack [his] conviction and sentence, except on the issue of [his]

8

attorney's ineffective assistance of counsel." *Doc. 21* at 17:5-9. Atole responded affirmatively. *Id.* at 17:10.

Ultimately, Judge Khalsa made the following finding as to Atole:

> That you are competent and capable of entering an informed plea, that you are aware of the nature of the charges against you and the consequences of your plea, that your waiver of rights and plea of guilty is knowing and voluntarily [sic] and supported by sufficient facts.

*Id.* at 20-21.

In light of the language of Atole's Plea Agreement and the statements made and understanding expressed at his plea colloquy, the Court finds that Atole knowingly and voluntarily entered his guilty plea and waived his right to collaterally attack his conviction and sentence, expect on the issue of ineffective assistance of counsel.

### iii. Miscarriage of Justice

In *Hahn*, the Tenth Circuit reasoned that the enforcement of a waiver might constitute a miscarriage of justice under one of four scenarios: (1) reliance by the court upon an impermissible factor, such as race; (2) ineffective assistance of counsel in negotiating the waiver; (3) a sentence that exceeds the statutory maximum; or (4) a waiver that is otherwise unlawful. *Hahn*, 359 F.3d at 1327. As to the final scenario, the court explained that a waiver would only be invalidated if enforcement would "seriously affect [] the fairness, integrity or public reputation of the judicial proceedings." *Id.* at 1329. Although Atole does recite the rule of law that a "miscarriage of justice is sufficient to overcome the waiver of appeal provision," *see, e.g.*, *Doc. 17* at 6, he does not directly argue that any of the scenarios described in *Hahn* exist here or that enforcement of the waiver of his post-conviction rights might otherwise constitute a miscarriage of justice.

9

First, there is nothing in the record to suggest, and Atole has not submitted any evidence to establish, that the Court relied upon an impermissible factor, such as race, at any time during the disposition of his criminal case. Second, Atole does not contend or present evidence that Mr. Gonzales was ineffective in negotiating the waiver or that the waiver was unlawful. Finally, Atole does not argue, and the record does not suggest, that the sentence imposed by Judge Junell exceeded the statutory maximum. Simply put, none of the four *Hahn* scenarios exist here, and enforcing the waiver of Atole's Section 2255 rights as to his claim that his conviction "implicates selective or malicious prosecution and equal protection violation" will not result in a miscarriage of justice.

### B. Ineffective Assistance of Counsel Claims

To the extent Atole's claims are couched as ineffective assistance of counsel claims, and therefore outside the scope of the waiver in his Plea Agreement, they are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court devised a two-step inquiry to determine whether a lawyer's poor performance deprived an accused of his Sixth Amendment right to assistance of counsel. *Id.* at 686-87. In order to establish an ineffective assistance claim, a movant must demonstrate first, "that counsel's performance was deficient," and second, "that the deficient performance prejudiced [his] defense." *Foster v. Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999). To establish deficient performance, a movant must show that his attorney made "errors so serious that counsel was not functioning as the counsel guaranteed to the defendant by the Sixth Amendment," *Williams v. Taylor*, 529 U.S. 362, 390 (2000) (internal quotations omitted), and that his legal "representation fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688.

Atole submits that his attorney, Mr. Gonzales, was "ineffective for not bringing up, based on what he knew about [the female officer] and his client, a defense of selective prosecution." *Doc. 17* at 8. He expands on his argument, explaining that "[Mr. Gonzales] was well aware of the fact that his client . . . was related to the arresting officer . . . but did nothing to remedy the potential conflict of interest and selective prosecution inherent [in] the case." *Doc. 17* at 5. Atole does not specify what he believes Mr. Gonzales should have done to remedy the potential conflict of interest or the purported "selective prosecution." Nor does he clearly articulate the basis on which the prosecution discriminated against him. Instead, he suggests that his "claim of selective prosecution is pegged and anchored an arbitrary classification of conflict of interest, between himself on the one hand and . . . the arresting officer who has an exe[sic] to grind, based on long internecine family feuds." *Doc. 24* at 3. That is, it was this prior relationship with the female arresting officer involved in the 2016 incident that somehow produced an asserted "fatal conflict of interest." *Id.* at 8.

Applying the relevant standard, the question is whether Mr. Gonzales' discovery of the details of the relationship between Atole and the female officer and/or of Atole's purported "selective prosecution" would have led a reasonable attorney to recommend against entering into the Plea Agreement. To be sure, Mr. Gonzales had a duty to discuss possible defenses with Atole, as a failure to advise a defendant of viable defenses may render an attorney's representation constitutionally insufficient. *See, e.g., Heard v. Addison*, 728 F.3d 1170 (10th Cir. 2013) (reasoning that counsel's failure, during the plea-negotiation stage, to advise the defendant of possibly viable defenses to the crime charged rendered her performance constitutionally deficient).

11

But, here, "selective prosecution" was *not* a defense on the merits to Atole's criminal assault charges. *See United States v. Armstrong*, 517 U.S. 456, 463 (1996); *see also Buntrock v. S.E.C.*, 347 F.3d 995 (7th Cir. 2003) (reasoning that just as a constitutional violation by an arresting officer is not a defense to the crime charged, "a conflict of interest of a prosecutor" does not warrant dismissal of a criminal prosecution so long as it does not carry over to the conduct of the proceeding itself). Rather, "selective prosecution" is an "independent assertion" that a charge was brought for reasons forbidden by the Constitution, reasons such as "race, religion, or other arbitrary classification." *See Armstrong*, 517 U.S. at 463.

Moreover, establishing a claim of "selective prosecution" is "demanding." *Id*. This is because the "presumption of regularity supports" the prosecutorial decisions of federal prosecutors, and "in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Id*. at 464 (quoting *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15 (1926)). To successfully establish a "selective prosecution" claim, a defendant must present clear evidence: (1) that others similarly situated have not been prosecuted for similar conduct; and (2) that the allegedly discriminatory prosecution of the defendant was based on an impermissible motive. *Wayte v. United States*, 470 U.S. 598, 605 (1985). Yet, Atole has not endeavored to establish, or even allege, that others similarly situated to him have not been prosecuted or that there was some particular discriminatory purpose by the United States in prosecuting him for assault.

Indeed, it seems that Atole may have conflated a claim of "selective prosecution" with the potential for impeachment of a witness for bias. Had Atole gone to trial, Mr.

Gonzales certainly *could* have attempted to impeach the female officer based upon her prior interactions with Atole and any alleged bias against him. Nevertheless, the Court is unwilling to say that this type of impeachment material was strong enough that it rendered objectively unreasonable a recommendation that Atole enter into the Plea Agreement. Applying a heavy measure of deference to Mr. Gonzales' judgment, as the Court must, the recommendation that Atole enter into the Plea Agreement, rather than pursue an unsupported defense of "selective prosecution" or attempt to impeach the female office for bias at trial, was a reasonable one. Contrary to Atole's position, evidence of bias by a witness does *not* necessarily produce a "fatal conflict of interest" in the prosecution of a defendant.

Furthermore, Atole cannot show that any alleged deficiency in Mr. Gonzales' performance prejudiced him. To establish prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* The prejudice component focuses on the question of whether counsel's allegedly deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Williams*, 529 U.S. at 393. The United States Supreme Court has offered the following guidance in evaluating ineffective assistance of counsel claims in habeas petitions:

> where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This

13

assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of the trial.

*Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Here, Atole has done nothing to persuade the Court that he could have met the "demanding" standard for establishing "selective prosecution" or overcome the presumption of regularity that supports prosecutorial decisions. Nor has he established that any discussion or investigation of a "selective prosecution" claim with Mr. Gonzales would have actually caused him to proceed to trial in lieu of entering the Plea Agreement and pleading guilty. It bears mentioning that Atole's Plea Agreement also covered an *unrelated* assault charge for which he was ultimately sentenced to 71 months on *each* offense, to be served *concurrently*. Under these circumstances outlined above, the Court cannot say that any failure by Mr. Gonzales to proceed on the defense of "selective prosecution" or to explore the extent of Atole's relationship with the female officer, or her bias against him, prejudiced Atole.

Wherefore,

**IT IS HEREBY RECOMMENDED** that Atole's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2225 (*Doc. 17*) be denied and that his claims be dismissed with prejudice.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE